IN UNITED STATED DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| JACQUELINE AMES : | |
| Plaintiff, : | |
| : | Case No.06-2039-RMC |
| v. : | |
| HSBC Bank USA, N.A. : | |
| Defendant. : | |

**PLAINTIFF'S MOTION TO AMEND COMPLAINT**

COMES NOW the Plaintiff, Jacqueline Ames, by the through counsel who moves pursuant to LCvR 7.1(i) and 15(a)of the U.S. District Court of the District of Columbia to amend her complaint to add new facts and claims against Defendant HSBC Bank USA, N.A. ("HSBC") for violations alleged under the District of Columbia Wage Payment and Collection law (D.C. Code §32-1301, *et seq.*) (the "Wage Payment Law").

On May 25, 2007, counsel for HSBC was notified of Plaintiff's intent to file an amendment to her complaint augmenting her claims against HSBC pertaining to alleged violations under the applicable sections of the Act. On June 4, 2007, counsel for HSBC confirmed that HSBC does not oppose the filing of the instant motion.

In accordance with LCvR 15.1, a copy of the proposed amended complaint is attached as Exhibit 1 to this motion.

## POINTS AND AUTHORITIES

Rule 15(a) under the Fed. R. Civ. P. provides that: "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. . ." As drafted, the governing language of Rule 15(a) presents broad authority to a party seeking to amend a pleading and does not require the moving party to present – or satisfy – any specific criteria.

### History of Case

The record reflects that on September 26, 2006 Plaintiff filed a complaint against her former employer, HSBC Bank, USA, N.A. ("Defendant") in the Superior Court of the District of Columbia asserting claims against Defendant under the following theories: (a) breach of express contract, (b) breach of implied contract, and (c) breach of good faith and fair dealing.

On November 29, 2006, Defendant filed a notice of removal in accordance with 28 U.S.C. §1446 transferring the case to federal district court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(1).

On December 6, 2006 Defendant filed a motion to dismiss all three counts of Plaintiff's claims for failure to state a claim. An opposition was filed by Plaintiff on December 18, 2006 and Defendant's motion was denied by the court by order dated May 18, 2007.

On May 23, 2007, a consent motion to extend time for HSBC's answer was filed with the court and the time for HSBC's answer was extended to June 15, 2007.

HSBC's counsel was notified of Plaintiff's intention to file a motion to amend her complaint on May 25, 2007. This is the first time that the Plaintiff has moved to amend her complaint to add supplemental claims. Moreover, the proposed amendments to the initial

complaint are necessary to ensure that Plaintiff's rights under the Act are properly perfected and not for the purpose of undue delay, bad faith or dilatory motive. Moreover, there will be no undue prejudice to HSBC or delay to the proceedings if the Court grants the motion.

**Conclusion**

WHEREFORE, the Plaintiff respectfully requests that the Court grant her motion to amend her complaint to add additional claims against HSBC for alleged violations under the Wage Payment Law.

June 8, 2007

Respectfully submitted,

/s/ Patricia L. Payne
Patricia L. Payne (DC Bar # 317586)
Payne & Associates
1250 24th St., N.W., Suite 300
Washington, DC 20037
(202) 835-1610

*Counsel for Plaintiff Jacqueline Ames*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of June 2007, a copy of the foregoing was served by first class mail, postage prepaid, to David S. Cohen, Esq., Milbank, Tweed, Hadley & McCloy, LLP, 1850 K Street, N.W., Suite 1100, Washington, DC 20006.

/s/ Patricia Payne, Esq.
Patricia Payne

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| JACQUELINE AMES | : |
| Plaintiff, | : |
| v. | : Case No. 06-2039-RMC |
| HSBC Bank USA, N.A. | : |
| Defendant. | : |

### ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT

Upon consideration of Plaintiff's Motion to Amend Complaint, and any opposition thereto, other pleadings in this case, any oral argument on this motion, and for any other reasons stated from the bench, it is therefore,

ADJUDGED, ORDERED and DECREED that Plaintiff's Motion to Amend Complaint is hereby GRANTED.

Dated: _____, 2007

_____
The Honorable Rosemary M. Collyer
United States District Court
   for the District of Columbia

IN UNITED STATED DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

JACQUELINE AMES          :
                         :
    Plaintiff,           :
                         :  Case No.06-2039-RMC
    v.                   :
                         :
HSBC Bank USA, N.A.      :
                         :
    Defendant.           :

**PLAINTIFF'S AMENDED COMPLAINT**

**COMES NOW** Plaintiff Jacqueline Ames ("Ms. Ames" or "Plaintiff"), by counsel, and for her Complaint against the Defendant HSBC Bank USA, N.A. ("HSBC," "the Bank" or "Defendant") avers as follows:

**PARTIES AND VENUE**

1. Plaintiff is a natural person and a resident of the District of Columbia.

2. Upon information and belief, HSBC is a national banking organization with principal offices in the State of New York and which maintains offices and active operations in Washington, D.C.  Substantially all acts and/or omissions relating to Plaintiff's claims against Defendant took place within Washington, D.C.

3. Venue properly lies in the District of Columbia

**JURISDICTION**

4. This Court has jurisdiction over this matter pursuant to 28 U. S. C. §1332(a)(1).

1

**FACTUAL ALLEGATIONS**

5. Ms. Ames was originally hired by the Bank in approximately 1987 while she was a resident of New York State. During the next 18 years, Ms. Ames established a distinguished career at HSBC and worked her way up from her initial position as teller to increasingly responsible positions including Assistant Vice President – Sales, Vice President – Branch Manager and, ultimately, Vice President of Embassy Banking & Business Development.

6. At all times relevant in this complaint Ms. Ames was and "employee" as defined by the D.C. Wage and Hour Law ("Wage and Hour Law) in D.C. Code §32-1301(2) and HSBC was an "employer" as by the Wage and Hour Law in D.C. Code §32-1301(1). At all times relevant in this complaint Ms. Ames was not employed by HSBC in a bona fide "executive, administrative, or professional capacity" as described in D.C. Code §32-1301(2).

7. At all times relevant in this complaint Ms. Ames did not have management, supervisory or oversight capacity over HSBC employees, did not have discretionary management powers and did not have authority to hire or fire HSBC employees.

8. At all times relevant in this complaint Ms. Ames was not assigned and have not have work responsibilities related to the management policies of HSBC.

9. At all time relevant in this complaint Ms. Ames was not employed as a professional by HSBC: (a) whose primary duty consisted of the performance of work requiring knowledge of an advance type in a field of science, or (b) whose learning is customarily acquired by a prolonged course of specialized academic intellectual instruction or work that is original and creative in character in a recognized field of artistic endeavor, or (c) involve teaching and imparting knowledge or (d) in computer science.

10. In 2004, at the Bank's request and offer, Ms. Ames transferred from New York State to Washington, D.C. to assume the position of Vice President of Embassy Banking & Business Development.

11. To induce her to continue her work relationship with the Bank, Ms. Ames was promised by HSBC that as part of her compensation she would be paid certain incentive commissions, bonuses, and other awards based on the performance of agreed-upon metrics.

12. To induce her to continue her work relationship with the Bank, HSBC offered Ms. Ames approximately 5,000 stock options to purchase the Bank's stock pursuant to its stock option plan.

13. Ms. Ames accepted the terms (including, without limitation, the incentive commissions, bonuses, and other awards, and stock options) offered to her by HSBC as part of her compensation, and continued working at the Bank forgoing other employment opportunities.

14. From 1987 until her transfer to the Washington, D.C. office in 2004, Ms. Ames received numerous accolades and awards and superlative performance evaluations documenting her many important contributions to the Bank.

15. After her transfer to the Washington, D.C. office in 2004, Ms. Ames observed a number of significant managerial and operational problems in the branch which she brought to the attention of her immediate supervisor, Mr. Seamus McMahon.

16. Mr. McMahon resented the constructive criticism and suggestions offered by Ms. Ames. He assigned Mr. Kevin Kavanah to supervise Ms. Ames and to serve as a new layer of management between Mr. McMahon and Ms. Ames.

17. Thereafter, Mr. Kavanah began a steady effort to transfer away Ms. Ames' responsibilities to assigned embassy accounts in favor of less experienced men. During this time

Mr. Kavanah made increasingly hostile and critical remarks about various women in the office (including temporary employees Katie Tozer and Mary Earl) regarding their weight, professional appearance, and attire.

18. Mr. Kavanah also strongly suggested that female employees under his watch should try to "fit the profile" that HSBC desired to project, and he requested that Ms. Ames begin to wear pantyhose – presumably in order to show off her legs.

19. Ms. Ames attempted to raise her concerns about Mr. Kavanah's statements to Mr. McMahon but her efforts were rebuffed. Ms. Ames then attempted to direct her concerns to other members of the HSBC management team (including Brendan McDonagh and Martin Glynn), but her efforts were intercepted by Mr. Kavanah. Mr. Kavanah stated to Ms. Ames that she was not to contact any member of senior management with complaints, but rather she was to direct <u>all</u> issues to him.

20. As part of her job, Ms. Ames was expected to develop and cultivate the embassy clients and accounts targeted by HSBC – which included lucrative accounts associated with the French, British and Saudi Embassies – as well as the affiliated accounts of the Saudi Royal Family. Notwithstanding Ms. Ames' extraordinary success in bringing in these prestigious accounts, Mr. Kavanah and Virginia Fallon (District Support Officer) routinely made hostile ethnically discriminatory and biased comments regarding the clients served by Ms. Ames, including comments that Arab clients were "involved in September 11th," were "nothing but trouble," and that the Saudis were "nothing but a bunch of terrorists." Ms. Ames was offended by these comments and affirmatively rejected them.

21. Given that she was tasked to develop business with this key Middle Eastern country of Saudi Arabia, Ms. Ames complained about these comments to Mr. Kavanah. She also

4

complained to Mary Ellen Johnson (Senior Operations Executive in New York temporarily assigned to the Washington Office) about the overtly hostile statements made by Mr. Kavanah and Ms. Fallon, but was accused by Bank representatives of being "overly sensitive" about the comments.

22. Ms. Ames also brought the offensive statements to the attention of Beth Bauman (HSBC Human Resources Director), but Ms. Bauman failed to follow up and otherwise refused to take any action. As a consequence, Mr. Kavanah and Virginia Fallon continued their offensive conduct and pattern of behavior with relative impunity.

23. Mr. Kavanah also made remarks to Ms. Ames attempting to link her more closely with the Saudis based on her skin color and he also stated that he had problems with people who have foreign accents.

24. Ms. Ames attempted to discuss with Mr. Kavanah her increasing concerns regarding the hostile and poisonous atmosphere he was creating in the Washington, D.C. office; however, Mr. Kavanah reiterated Mr. McMahon's prior instruction that "any and all problems" were to be communicated solely to Mr. Kavanah. He instructed Ms. Ames not to raise her concerns to anyone else in the organization, including Beth Bauman and Mr. McMahon.

25. During the last few months of Ms. Ames' employment with HSBC, Mr. Kavanah attempted to engage in a discussion regarding Prince Faisal's private financial matters with persons and agents clearly not authorized to discuss such matters. Mr. Kavanah's actions were sharply brought to Ms. Ames' attention by Prince Bandar's office shortly thereafter.

26. When informed of Mr. Kavanah's actions, Ms. Ames became deeply concerned that Mr. Kavanah's actions might have violated sections of the Privacy Act, 15 U.S.C., Subchapter I, §§ 6801-6809. She attempted to allay Prince Bandar's concerns while seeking assurances by

Mr. Kavanah that he would not repeat his actions; however, Ms. Ames' efforts to rectify the situation were rebuffed by HSBC.

27. Ms. Ames brought the situation to the attention of Ms. Alexine Von (Compliance Officer and a licensed attorney), who stated to Ms. Ames that she was equally troubled about Mr. Kavanah's statements and equally concerned about possible Privacy Act infractions.

28. Given the significance of the problem and the fact that Mr. Kavanah was himself involved, Ms. Ames relayed the substance of her concerns to Beth Bauman (Human Resources) and Javier Evans (1st Vice President, Human Resources). Neither Ms. Bauman nor Mr. Evans provided guidance or assistance to Ms. Ames or otherwise took any corrective action against Mr. Kavanah.

29. Shortly thereafter, the Bank began to isolate Ms. Ames in the workplace and take other retaliatory actions against her.

30. Within a few weeks following Ms. Ames' request that Mr. Kavanah cease discussing Prince Faisal's personal affairs, HSBC falsely accused Ms. Ames of accepting "kickbacks" from one of HSBC's embassy accounts – presumably the Saudi Embassy – and wrongly accused her of other undefined performance errors, including a trumped-up charge that she failed to clear a new client account in conformity with HSBC procedures.

31. HSBC also refused to permit Ms. Ames the opportunity to rebut any of the charges and fired her shortly thereafter.

32. Following the termination of her employment, HSBC refused to honor its contractual obligations to Ms. Ames relating to (a) earned commissions and bonuses earned for the third quarter (Q3) of 2004 ($35,000) and the fourth quarter (Q4) of 2004 ($35,000), and (b) $30,000 in a bonus vacation to South Africa – for a total of approximately $100,000.

33. Ms. Ames was also informed that, because her employment was being terminated, she would be forced to forfeit approximately 5,000 unexercised stock options – causing her further economic damage.

34. Ms. Ames made repeated demands on HSBC for it to pay her the compensation, commissions, bonuses and other benefits she had been promised, but HSBC has refused her demands.

## COUNT I
*(Breach of Express Contract)*

35. Ms. Ames hereby incorporates each of the above allegations as if fully restated herein.

36. HSBC's actions described herein constitute a breach of the express terms of its contractual relationship with Ms. Ames.

37. As a result of HSBC's breach of contract, Ms. Ames is owed an amount that will be established at trial but is believed to be approximately $100,000.

## COUNT II
*(Breach of Implied Contract)*

38. Ms. Ames hereby incorporates each of the above allegations as if fully restated herein.

39. HSBC's actions described herein constitute a breach of the implied terms of its contractual relationship with Ms. Ames.

40. As a result of HSBC's breach of contract, Ms. Ames is owed an amount that will be established at trial but is believed to be approximately $100,000.

## COUNT III
*(Breach of Implied Covenant of Good Faith and Fair Dealing)*

41. Ms. Ames hereby incorporates each of the above allegations as if fully restated herein.

42. Ms. Ames made repeated demands for HSBC to honor its contractual obligations to her, but her efforts were consistently rebuffed.

43. HSBC's refusal to make the payments called for in as a result of its contractual relationship with Ms. Ames is a continuation of its campaign of harassment against Ms. Ames and constitutes bad faith and unfair dealing.

44. As a result of HSBC's breach of the covenant of good faith and fair dealing implied in every contract, Ms. Ames has incurred damages.

## COUNT IV
*(D.C. Wage and Hour Violations Under D.C. Code §32-1301 et. seq.)*

45. Ms. Ames hereby incorporates each of the above allegations as if fully restated herein.

46. Pursuant to the agreement of the parties, Ms. Ames made repeated demands for HSBC to honor its contractual obligations to her (including earned compensation, commissions and bonuses), but her efforts were consistently rebuffed.

47. The compensation, commission and bonuses sought by Ms. Ames are "wages" as defined in D.C. Code §32-1301(3).

48. HSBC's refusal to make the payments called for in as a result of its contractual relationship with Ms. Ames is wilful and a continuation of its campaign of harassment against Ms. Ames and constitutes bad faith and unfair dealing.

49. As a result of HSBC's refusal to pay Ms. Ames her compensation, bonuses and benefits under the Wage and Hour Law, Ms. Ames is entitled to receive liquidated damages

8

equal to her unpaid wages and other remedies allowable under the Wage and Hour Law, including reimbursement of reasonable attorneys' fees and the costs of pursuing this action.

**WHEREFORE**, Ms. Ames prays for the following relief:

(a) Judgment in favor of Ms. Ames and against HSBC for compensatory damages in an amount to be established at trial;

(b) Prejudgment and post judgment interest**;**

(c) Attorneys fees and costs and court costs;

(d) Punitive damages in the amount of $100,000 for taking these actions with malice and bad faith;

(e) Liquidated and consequential damages as specified in the D.C. Wage and Hour Law in an amount to be established at trial;

(f) A declaratory judgement against HSBC for violating the D.C. Wage and Hour Law;

(g) Such other and further relief and the Court may deem just and proper.

PLAINTIFF DEMANDS A JURY ON ALL ISSUES SO TRIABLE.

June 8, 2007

Respectfully submitted,

/s/ Patricia L. Payne
Patricia L. Payne, Esq. (DC Bar # 317586)_
Payne & Associates
1250 24th St., N.W., Suite 300
Washington, DC 20037
(202) 835-1610

*Counsel for Plaintiff Jacqueline Ames*