**IN UNITED STATED DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

|                          |   |                       |
|--------------------------|---|-----------------------|
| JACQUELINE AMES          | : |                       |
|                          | : |                       |
|    Plaintiff, | : |                   |
|                          | : | Case No.06-2039-RMC   |
|    v.     | : |                       |
|                          | : |                       |
| HSBC Bank USA, N.A.      | : |                       |
|                          | : |                       |
|                          | : |                       |
|    Defendant. | : |                   |

**PLAINTIFF'S AMENDED COMPLAINT**

**COMES NOW** Plaintiff Jacqueline Ames ("Ms. Ames" or "Plaintiff"), by counsel, and

for her Complaint against the Defendant HSBC Bank USA, N.A. ("HSBC," "the Bank" or

"Defendant") avers as follows:

**PARTIES AND VENUE**

1.  Plaintiff is a natural person and a resident of the District of Columbia.

2.  Upon information and belief, HSBC is a national banking organization with principal

offices in the State of New York and which maintains offices and active operations in

Washington, D.C.  Substantially all acts and/or omissions relating to Plaintiff's claims against

Defendant took place within Washington, D.C.

3.  Venue properly lies in the District of Columbia

**JURISDICTION**

4.  This Court has jurisdiction over this matter pursuant to 28 U. S. C. §1332(a)(1).

## FACTUAL ALLEGATIONS

5.   Ms. Ames was originally hired by the Bank in approximately 1987 while she was a resident of New York State.  During the next 18 years, Ms. Ames established a distinguished career at HSBC and worked her way up from her initial position as teller to increasingly responsible positions including Assistant Vice President – Sales, Vice President – Branch Manager and, ultimately, Vice President of Embassy Banking & Business Development.

6.   At all times relevant in this complaint Ms. Ames was and "employee" as defined by the D.C. Wage and Hour Law ("Wage and Hour Law) in D.C. Code §32-1301(2) and HSBC was an "employer" as by the Wage and Hour Law in D.C. Code §32-1301(1).  At all times relevant in this complaint Ms. Ames was not employed by HSBC in a bona fide "executive, administrative, or professional capacity" as described in D.C. Code §32-1301(2).

7.   At all times relevant in this complaint Ms. Ames did not have management, supervisory or oversight capacity over HSBC employees, did not have discretionary management powers and did not have authority to hire or fire HSBC employees.

8.   At all times relevant in this complaint Ms. Ames was not assigned and have not have work responsibilities related to the management policies of HSBC.

9.   At all time relevant in this complaint Ms. Ames was not employed as a professional by HSBC: (a) whose primary duty consisted of the performance of work requiring knowledge of an advance type in a field of science, or (b) whose learning is customarily acquired by a prolonged course of specialized academic intellectual instruction or work that is original and creative in character in a recognized field of artistic endeavor, or (c) involve teaching and imparting knowledge or (d) in computer science.

10.  In 2004, at the Bank's request and offer, Ms. Ames transferred from New York State to Washington, D.C. to assume the position of Vice President of Embassy Banking & Business Development.

11.  To induce her to continue her work relationship with the Bank, Ms. Ames was promised by HSBC that as part of her compensation she would be paid certain incentive commissions, bonuses, and other awards based on the performance of agreed-upon metrics.

12.  To induce her to continue her work relationship with the Bank, HSBC offered Ms. Ames approximately 5,000 stock options to purchase the Bank's stock pursuant to its stock option plan.

13.  Ms. Ames accepted the terms (including, without limitation, the incentive commissions, bonuses, and other awards, and stock options) offered to her by HSBC as part of her compensation, and continued working at the Bank forgoing other employment opportunities.

14.  From 1987 until her transfer to the Washington, D.C. office in 2004, Ms. Ames received numerous accolades and awards and superlative performance evaluations documenting her many important contributions to the Bank.

15.  After her transfer to the Washington, D.C. office in 2004, Ms. Ames observed a number of significant managerial and operational problems in the branch which she brought to the attention of her immediate supervisor, Mr. Seamus McMahon.

16.  Mr. McMahon resented the constructive criticism and suggestions offered by Ms. Ames.  He assigned Mr. Kevin Kavanah to supervise Ms. Ames and to serve as a new layer of management between Mr. McMahon and Ms. Ames.

17.  Thereafter, Mr. Kavanah began a steady effort to transfer away Ms. Ames' responsibilities to assigned embassy accounts in favor of less experienced men.  During this time

Mr. Kavanah made increasingly hostile and critical remarks about various women in the office (including temporary employees Katie Tozer and Mary Earl) regarding their weight, professional appearance, and attire.

18.  Mr. Kavanah also strongly suggested that female employees under his watch should try to "fit the profile" that HSBC desired to project, and he requested that Ms. Ames begin to wear pantyhose – presumably in order to show off her legs.

19.  Ms. Ames attempted to raise her concerns about Mr. Kavanah's statements to Mr. McMahon but her efforts were rebuffed.  Ms. Ames then attempted to direct her concerns to other members of the HSBC management team (including Brendan McDonagh and Martin Glynn), but her efforts were intercepted by Mr. Kavanah.  Mr. Kavanah stated to Ms. Ames that she was not to contact any member of senior management with complaints, but rather she was to direct all issues to him.

20.  As part of her job, Ms. Ames was expected to develop and cultivate the embassy clients and accounts targeted by HSBC – which included lucrative accounts associated with the French, British and Saudi Embassies – as well as the affiliated accounts of the Saudi Royal Family.  Notwithstanding Ms. Ames' extraordinary success in bringing in these prestigious accounts, Mr. Kavanah and Virginia Fallon (District Support Officer) routinely made hostile ethnically discriminatory and biased comments regarding the clients served by Ms. Ames, including comments that Arab clients were "involved in September 11th," were "nothing but trouble," and that the Saudis were "nothing but a bunch of terrorists."  Ms. Ames was offended by these comments and affirmatively rejected them.

21.  Given that she was tasked to develop business with this key Middle Eastern country of Saudi Arabia, Ms. Ames complained about these comments to Mr. Kavanah.  She also

complained to Mary Ellen Johnson (Senior Operations Executive in New York temporarily assigned to the Washington Office) about the overtly hostile statements made by Mr. Kavanah and Ms. Fallon, but was accused by Bank representatives of being "overly sensitive" about the comments.

22. Ms. Ames also brought the offensive statements to the attention of Beth Bauman (HSBC Human Resources Director), but Ms. Bauman failed to follow up and otherwise refused to take any action. As a consequence, Mr. Kavanah and Virginia Fallon continued their offensive conduct and pattern of behavior with relative impunity.

23. Mr. Kavanah also made remarks to Ms. Ames attempting to link her more closely with the Saudis based on her skin color and he also stated that he had problems with people who have foreign accents.

24. Ms. Ames attempted to discuss with Mr. Kavanah her increasing concerns regarding the hostile and poisonous atmosphere he was creating in the Washington, D.C. office; however, Mr. Kavanah reiterated Mr. McMahon's prior instruction that "any and all problems" were to be communicated solely to Mr. Kavanah. He instructed Ms. Ames not to raise her concerns to anyone else in the organization, including Beth Bauman and Mr. McMahon.

25. During the last few months of Ms. Ames' employment with HSBC, Mr. Kavanah attempted to engage in a discussion regarding Prince Faisal's private financial matters with persons and agents clearly not authorized to discuss such matters. Mr. Kavanah's actions were sharply brought to Ms. Ames' attention by Prince Bandar's office shortly thereafter.

26. When informed of Mr. Kavanah's actions, Ms. Ames became deeply concerned that Mr. Kavanah's actions might have violated sections of the Privacy Act, 15 U.S.C., Subchapter I, §§ 6801-6809. She attempted to allay Prince Bandar's concerns while seeking assurances by

Mr. Kavanah that he would not repeat his actions; however, Ms. Ames' efforts to rectify the situation were rebuffed by HSBC.

27. Ms. Ames brought the situation to the attention of Ms. Alexine Von (Compliance Officer and a licensed attorney), who stated to Ms. Ames that she was equally troubled about Mr. Kavanah's statements and equally concerned about possible Privacy Act infractions.

28. Given the significance of the problem and the fact that Mr. Kavanah was himself involved, Ms. Ames relayed the substance of her concerns to Beth Bauman (Human Resources) and Javier Evans (1st Vice President, Human Resources). Neither Ms. Bauman nor Mr. Evans provided guidance or assistance to Ms. Ames or otherwise took any corrective action against Mr. Kavanah.

29. Shortly thereafter, the Bank began to isolate Ms. Ames in the workplace and take other retaliatory actions against her.

30. Within a few weeks following Ms. Ames' request that Mr. Kavanah cease discussing Prince Faisal's personal affairs, HSBC falsely accused Ms. Ames of accepting "kickbacks" from one of HSBC's embassy accounts – presumably the Saudi Embassy – and wrongly accused her of other undefined performance errors, including a trumped-up charge that she failed to clear a new client account in conformity with HSBC procedures.

31. HSBC also refused to permit Ms. Ames the opportunity to rebut any of the charges and fired her shortly thereafter.

32. Following the termination of her employment, HSBC refused to honor its contractual obligations to Ms. Ames relating to (a) earned commissions and bonuses earned for the third quarter (Q3) of 2004 ($35,000) and the fourth quarter (Q4) of 2004 ($35,000), and (b) $30,000 in a bonus vacation to South Africa – for a total of approximately $100,000.

33.  Ms. Ames was also informed that, because her employment was being terminated, she would be forced to forfeit approximately 5,000 unexercised stock options – causing her further economic damage.

34.  Ms. Ames made repeated demands on HSBC for it to pay her the compensation, commissions, bonuses and other benefits she had been promised, but HSBC has refused her demands.

### COUNT I
*(Breach of Express Contract)*

35.  Ms. Ames hereby incorporates each of the above allegations as if fully restated herein.

36.  HSBC's actions described herein constitute a breach of the express terms of its contractual relationship with Ms. Ames.

37. As a result of HSBC's breach of contract, Ms. Ames is owed an amount that will be established at trial but is believed to be approximately $100,000.

### COUNT II
*(Breach of Implied Contract)*

38.  Ms. Ames hereby incorporates each of the above allegations as if fully restated herein.

39.  HSBC's actions described herein constitute a breach of the implied terms of its contractual relationship with Ms. Ames.

40.  As a result of HSBC's breach of contract, Ms. Ames is owed an amount that will be established at trial but is believed to be approximately $100,000.

### COUNT III
*(Breach of Implied Covenant of Good Faith and Fair Dealing)*

41.  Ms. Ames hereby incorporates each of the above allegations as if fully restated herein.

42.  Ms. Ames made repeated demands for HSBC to honor its contractual obligations to her, but her efforts were consistently rebuffed.

43.  HSBC's refusal to make the payments called for in as a result of its contractual relationship with Ms. Ames is a continuation of its campaign of harassment against Ms. Ames and constitutes bad faith and unfair dealing.

44.  As a result of HSBC's breach of the covenant of good faith and fair dealing implied in every contract, Ms. Ames has incurred damages.

### COUNT IV
*(D.C. Wage and Hour Violations Under D.C. Code §32-1301 et. seq.)*

45.  Ms. Ames hereby incorporates each of the above allegations as if fully restated herein.

46.  Pursuant to the agreement of the parties, Ms. Ames made repeated demands for HSBC to honor its contractual obligations to her (including earned compensation, commissions and bonuses), but her efforts were consistently rebuffed.

47.   The compensation, commission and bonuses sought by Ms. Ames are "wages" as defined in D.C. Code §32-1301(3).

48.  HSBC's refusal to make the payments called for in as a result of its contractual relationship with Ms. Ames is wilful and a continuation of its campaign of harassment against Ms. Ames and constitutes bad faith and unfair dealing.

49.  As a result of HSBC's refusal to pay Ms. Ames her compensation, bonuses and benefits under the Wage and Hour Law, Ms. Ames is entitled to receive liquidated damages

8

equal to her unpaid wages and other remedies allowable under the Wage and Hour Law,

including reimbursement of reasonable attorneys' fees and the costs of pursuing this action.

**WHEREFORE**, Ms. Ames prays for the following relief:

(a)     Judgment in favor of Ms. Ames and against HSBC for compensatory damages in an amount to be established at trial;

(b)     Prejudgment and post judgment interest**;**

(c)     Attorneys fees and costs and court costs;

(d)     Punitive damages in the amount of $100,000 for taking these actions with malice and bad faith;

(e)     Liquidated and consequential damages as specified in the D.C. Wage and Hour Law in an amount to be established at trial;

(f)     A declaratory judgement against HSBC for violating the D.C. Wage and Hour Law;

(g)     Such other and further relief and the Court may deem just and proper.


PLAINTIFF DEMANDS A JURY ON ALL ISSUES SO TRIABLE.

June 8, 2007

Respectfully submitted,

/s/ Patricia L. Payne_____
Patricia L. Payne, Esq. (DC Bar # 317586)_
Payne & Associates
1250 24th St., N.W., Suite 300
Washington, DC 20037
(202) 835-1610

*Counsel for Plaintiff Jacqueline Ames*